**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| PARISA SORBI, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-02353 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 12–13, 15, 21, 27– 28, 30–37 |
| | : | | |
| | : | | |
| MARCO RUBIO, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

**GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND; DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY; DENYING PLAINTIFF'S MOTION FOR EXPEDITED CONSIDERATION; DISMISSING U.S. ATTORNEY FOR THE DISTRICT OF COLUMBIA**

## I. INTRODUCTION

Plaintiff Parisa Sorbi is an American citizen who petitioned for an Immediate Relative ("IR-1") visa on behalf of her Iranian husband, Amirbahman Kalantarikhandani. After Mr. Kalantarikhandani completed an interview at the U.S. Embassy in Ankara, Turkey, in May 2024, the consular official refused the application and placed it in "administrative processing"—where it remained fourteen months later, when Mrs. Sorbi brought the instant action. Specifically, she sought to compel Defendants Marco Rubio, *et al.* (collectively, the "Government") to finally adjudicate Mr. Kalantarikhandani's IR-1 application. The Government moved to dismiss Mrs. Sorbi's complaint. In May 2026, following briefing on that motion, the Government notified Mr. Kalantarikhandani that it had re-adjudicated and rejected the application pursuant to a recent presidential directive. For the reasons discussed below, the Court now dismisses Mrs. Sorbi's complaint as moot and denies leave to file an amended complaint.

## II. FACTUAL BACKGROUND

### A. Legal Background

This case implicates two key provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1101 *et seq.*, governing the issuance of immigrant visas by consular officers. First, INA § 221(g) is one of several statutory bases on which a consular officer may deny a visa application, including the type of spousal application at issue here. Per State Department regulations:

> ***Grounds for refusal.*** When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.

22 C.F.R. § 42.81(a). Section 221(g) of the INA, in particular, directs a consular officer to deny a noncitizen's visa application when the officer "knows or has reason to believe" that the applicant is "ineligible to receive a visa" under "any . . . provision of law" based on the application materials submitted. 8 U.S.C. § 1201(g). From there, an officer "may choose to place an officially refused application in administrative processing" and "may then re-open and re-adjudicate the applicant's case" if new information bearing on the applicant's visa eligibility comes to light. *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. 2024) (citing 9 FAM § 306.2-2(A)(a)).

Second, § 212(f) is a separate statutory basis for refusal of visa applications under the INA. According to this provision:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f). Relevant to the instant case is Proclamation 10998, which President Trump issued in December 2025 and which took effect in January 2026. That directive, building on one issued six months prior, provided for the complete suspension of entry for nationals of "Countries of Identified Concern"—including Iran. *See* 90 Fed. Reg. 59717, 59722 (Dec. 16, 2025). Proclamation 10998 set forth limited categorical exceptions to the suspension, in addition to confirming that case-by-case waivers are available for applicants whose entry "serve[s] a United States national interest." *Id.* at 59726–28. The proclamation emphasized, however, that "immigrant visas for family members of individuals in the United States will no longer be a broad categorical exception." *Id.* at 59719.

**B. Factual and Procedural Background**

In early 2023, Plaintiff Parisa Sorbi filed an IR-1 immigrant visa petition on behalf of her Iranian husband, Amirbahman Kalantarikhandani, as the pair sought to "begin [their] life together in the United States." *See* Pl.'s Complaint for Writ of Mandamus for Delayed IR-1 Visa Processing ("Compl."), ECF No. 1 at 6; Compl. Attachment 8, ECF No. 1-8.[1] Mrs. Sorbi, an American citizen residing in California, is the sole caregiver for her mother, who suffers from "severe chronic medical conditions" and "requires ongoing care." Compl. at 6. This situation, in tandem with the volatile political circumstances in Iran, has prevented Mrs. Sorbi from visiting Mr. Kalantarikhandani on a regular basis. *Id.* All told, Mrs. Sorbi reports that her lengthy separation from her husband has taken a significant emotional, medical, and financial toll. *Id.*

---

[1] When citing to Mrs. Sorbi's filings, the Court uses the ECF pagination associated with each document.

In May 2024, Mr. Kalantarikhandani completed a formal consular interview in Ankara in connection with his IR-1 application. *Id.* at 4 (§ III). His application was then placed in "administrative processing . . . under [INA] 221(g) refusal." *Id.*; *see also* Compl. Attachment 1, ECF No. 1-1 at 4 (noting that Mr. Kalantarikhandani's application had been marked as "Refused" since his interview). In January 2025, Mr. Kalantarikhandani impressed the urgency of his application—which remained in administrative processing—upon embassy officials. Compl. Attachment 5, ECF No. 1-5 at 1. In this correspondence, he requested expedited processing because his "immediate presence [was] crucial to support [Mrs. Sorbi] emotionally." *Id.* After Mr. Kalantarikhandani submitted requested medical documentation regarding Mrs. Sorbi's mother, *see id.* at 2–5, the embassy informed him in March 2025 that "the situation does not meet our expedite criteria" and "[w]e will notify you when the administrative process is complete," *id.* at 13.

In July 2025, Mrs. Sorbi filed the instant lawsuit against Secretary of State Marco Rubio, the U.S. Department of State, the U.S. Embassy in Ankara (and its Consul General), and the U.S. Attorney for the District of Columbia,[2] alleging unreasonable delay in the processing of her husband's IR-1 visa application. *See* Compl. Mrs. Sorbi requested a writ of mandamus for immediate adjudication of the application under the Mandamus Act and the Administrative Procedure Act ("APA"). *See id.* at 3–4, 7. She separately grounded her request for relief in the Fifth Amendment's Due Process Clause and the Universal Declaration of Human Rights ("UDHR"), asserting that these authorities respectively "protect[] family unity" and "affirm[] the

[2] In its motion to dismiss, the Government points out that the named U.S. Attorney plays no role in visa adjudication and thus cannot provide the relief requested. Gov't's Mot. Dismiss, ECF No. 21 at 4–5. Mrs. Sorbi, apparently acknowledging that this official was named in error, "does not oppose dismissal of this defendant." Pl.'s Opp'n to Gov't's Mot. Dismiss, ECF No. 22 at 5. The Court hereby dismisses the U.S. Attorney for the District of Columbia from this action.

right to family life." *See id.* at 7. In December 2025, the Government moved to dismiss Mrs. Sorbi's complaint for failure to state a claim upon which relief can be granted.[3] *See* Gov't's Mot. Dismiss, ECF No. 21. The Government argued, *inter alia*, that the at-issue application had already been formally refused under INA § 221(g)—and thus required no further consular action. *See id.* at 5–10.

In May 2026, after the motion to dismiss Mrs. Sorbi's complaint was fully briefed,[4] the U.S. Embassy issued a Refusal Worksheet to Mr. Kalantarikhandani. The worksheet informed him that "a consular officer found [him] ineligible for an immigrant visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 10998." Pl.'s

[3] In October 2025, before the Government filed its motion to dismiss, Mrs. Sorbi moved for default judgment. Pl.'s Ex Parte Mot. Default J., ECF No. 13; Pl.'s Notice of Filing of Mot. Default J., ECF No. 15. She claimed that the Government failed to timely respond to her complaint under the Federal Rules of Civil Procedure, as more than sixty days had passed since she had filed the complaint. *See id.* at 1; Fed. R. Civ. P. 12(a)(2). Mrs. Sorbi avers that service was completed on August 13, 2025, meaning that the Government's response deadline would have fallen on October 14, the day after Columbus Day. *See* Pl.'s Notice of Defs.' Failure to Timely Respond, ECF No. 20 at 1; Fed. R. Civ. P. 6(a)(1). By this time, however, Government litigation deadlines in this District—including those falling between October 1, 2025, and November 12, 2025, as here—had been extended by fifty-three days in light of the lapse in executive-branch appropriations. *See* Standing Order No. 25-59 (Nov. 13, 2025), ¶ 1. The Government filed its motion to dismiss on Monday, December 8, the final day of its fifty-three-day extension. *See* Gov't's Mot. Dismiss. Because the Government's responsive motion was timely filed, the Court denies Mrs. Sorbi's motion for default judgment.

[4] In December 2025, Mrs. Sorbi moved for leave to file a surreply, having previously filed the surreply without leave of the Court. *See* Mot. Leave to File Sur-Reply, ECF No. 27. "[S]urreplies are generally disfavored . . . and the determination of whether to grant or deny leave is entrusted to the sound discretion of the district court." *Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 62 (D.D.C. 2011), *aff'd*, No. 11-5231, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012). Considering the "solicitude" traditionally afforded to *pro se* litigants like Mrs. Sorbi, *see id.*, the Court exercises its discretion and grants the motion. The Court notes, however, that the contents of the surreply do not alter the legal conclusions reached in this opinion.

Additionally, in January 2026, Mrs. Sorbi moved for expedited consideration of the Government's pending motion to dismiss. Pl.'s Mot. Expedited Consideration of Defs.' Pending Mot. Dismiss, ECF No. 28. Because the Court now considers and dismisses her claims, it denies this motion as moot.

Consolidated Suppl. Notice, Notice of Suppl. Auth., and Notice of Formal Visa Refusal Under Section 212(f) ("Pl.'s Consolidated Notice") Attachment 1, ECF No. 30-1. The document further stated that this refusal was unappealable and that a National Interest Exception ("NIE") would not be granted. *Id.* Mrs. Sorbi promptly informed the Court of this development by filing a consolidated supplemental notice and notice of supplemental authority. *See* Pl.'s Consolidated Notice at 2–3. The Government then supplemented its motion to dismiss with a notice of mootness, asserting that this case was now moot in view of the recent § 212(f) refusal and should thus be dismissed. Gov't's Notice of Mootness, ECF No. 31 at 3. Mrs. Sorbi filed an opposition to this notice, as well as several additional memoranda and notices of supplemental authority. *See* ECF Nos. 32–37. As described below, the Court construes these filings as a motion for leave to file an amended complaint.

## III. LEGAL STANDARD

### A. Mootness

Federal courts are courts of limited jurisdiction, with an ongoing obligation to ensure that they retain subject-matter jurisdiction over the causes before them. *See Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004). Accordingly, pursuant to the Federal Rules of Civil Procedure, it is incumbent upon a federal court to dismiss an action "[i]f the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).

A corollary to Article III of the Constitution, the mootness doctrine "limits federal courts to deciding actual, ongoing controversies." *Clarke v. United States*, 915 F.2d 699, 700–01 (D.C. Cir. 1990) (en banc). As the Supreme Court has articulated, "a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (citation modified). Mootness therefore

arises "when, among other things, the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (citation modified). Dismissal is appropriate in such cases, even if the litigation posed a live controversy at the time of filing. *Clarke*, 915 F.2d at 701. Importantly, when deciding a motion to dismiss on mootness grounds, courts are permitted to consider supplemental, undisputed facts from the record in addition to the allegations on the face of the complaint. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B. Leave to Amend

Under Rule 15(a), courts "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts can deny leave if there exists good cause to do so, including—as relevant here—if amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The D.C. Circuit has clarified that "a district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010) (citation modified).

## IV. ANALYSIS

When she filed this lawsuit in July 2025, Mrs. Sorbi sought to compel a final adjudication of her husband's visa application, which had been placed in administrative processing following a refusal under INA § 221(g). In May 2026, the Government re-adjudicated Mr. Kalantarikhandani's visa application and issued a new refusal under § 212(f), thereby providing the final adjudication Mrs. Sorbi sought and mooting her original claims. The Court therefore need not decide whether the earlier § 221(g) refusal—the subject of Mrs. Sorbi's original Complaint and the Government's original motion to dismiss—also constituted a final

adjudication. Although the Court construes Mrs. Sorbi's recent filings as a motion for leave to amend her complaint to challenge the § 212(f) refusal, those proposed claims are futile because they are barred by the doctrine of consular nonreviewability.

**A. Mrs. Sorbi's Original Complaint**

As described above, Mrs. Sorbi's Complaint asserted claims of unreasonable delay in the adjudication of her husband's visa application and sought injunctive relief under the Mandamus Act and the APA. Compl. at 4 (§ 3); *see also id.* at 6–7 (requesting issuance of a writ "compelling the Defendants to take all appropriate action to adjudicate [her] husband's visa application without further delay"). Now, Mrs. Sorbi has gotten the final agency action she requested when she filed suit. The refusal notice Mr. Kalantarikhandani received in May 2026 expressly informed him that a consular officer had deemed him ineligible for a visa under § 212(f), that this decision could not be appealed, and that an NIE would not be granted in his case. Pl.'s Consolidated Notice Attachment 1. The notice here demonstrates that the consular officer who evaluated Mr. Kalantarikhandani's application "made a final, clear and unambiguous decision that was not subject to any further consideration." *Aramnahad v. Rubio*, No. 24-cv-1817 (MAU), 2025 WL 3706645, at *4 (D.D.C. Dec. 22, 2025); *see also id.* at *2 (describing a similarly worded § 212(f) visa refusal issued under the Proclamation).

As other courts in this District have recognized, a § 212(f) refusal issued during the course of litigation is a final decision that moots unreasonable-delay claims brought on behalf of a visa applicant. *See, e.g.*, *Nikjooy v. Rubio*, No. 24-cv-1989 (LLA), 2026 WL 1801159, at *3–4 (D.D.C. June 23, 2026); *Aramnahad*, 2025 WL 3706645, at *4; *Aboutalebi v. Dep't of State*, No. 19-cv-2605 (TJK), 2019 WL 6894046, at *2 (D.D.C. Dec. 18, 2019); *cf. Mehneh v. Rubio*, 164 F.4th 928, 932 (D.C. Cir. 2026) ("Because the Department completed administrative processing

and refused the visa [under § 212(a)], we cannot grant any relief to Mr. Alamouti."). What is more, courts across the country have reached the same conclusion with respect to § 212(f) refusals issued pursuant to Proclamation 10998, specifically. *See Nagi v. Rubio*, No. 25-cv-2453 (JPC), 2026 WL 1831327, at *4 (S.D.N.Y. June 25, 2026) (collecting cases). This Court joins that growing consensus in concluding that Mrs. Sorbi's unreasonable-delay claims are now moot, warranting dismissal of her complaint.

Nevertheless, Mrs. Sorbi maintains that her claims are not moot and that the unreasonable delay alleged is still "independently subject to judicial review under the APA," having predated the issuance of Proclamation 10998.[5] Pl.'s Suppl. Notice of Authority in Further Supp. Pl.'s Response to Defs.' Notice of Mootness ("Pl.'s Suppl. Notice"), ECF No. 33 at 3. But this argument ignores both the relief that she initially requested and the relief she may be entitled to under the APA. To reiterate, Mrs. Sorbi's complaint sought only "immediate visa adjudication" in light of alleged delay. Compl. at 4 (§ 3). The relevant APA provision authorizes courts to provide that relief by compelling unreasonably delayed agency action. 5 U.S.C. § 706(1). It cannot be disputed that Mrs. Sorbi has now secured an adjudication in the form of the § 212(f) refusal.[6]

[5] Mrs. Sorbi does not contend, nor does the Court independently assess, that her claims fall within any of the established exceptions to mootness.

[6] Mrs. Sorbi also stresses that U.S. Embassy correspondence to her congresswoman back in 2025 (in response to an inquiry the representative submitted regarding Mr. Kalantarikhandani's application) erroneously identified the petitioner as Mrs. Sorbi's brother rather than Mrs. Sorbi herself. *See, e.g.*, Pl.'s Opp'n to Gov't's Mot. Dismiss, ECF No. 22 at 6–8. Mrs. Sorbi goes so far as to contend that the misidentification "proves [the Embassy] never reviewed" the proper case file. *Id.* at 8. To the extent Mrs. Sorbi still relies on this misidentification as a basis for her claims, *see* Pl.'s Opp'n to Defs.' Notice of Mootness, ECF No. 32 at 2, it does not change the existence of a final adjudication—in the form of a refusal notice that did not itself contain any purported misidentification—in May 2026.

In short, because the Government has now rendered "a final and unequivocal decision" on the visa application at issue, Mrs. Sorbi has "obtained the relief [she] sought, even if the result is not the one for which [she] had hoped." *Aramnahad*, 2025 WL 3706645, at *4. The Court can no longer provide any effective remedy for Mrs. Sorbi's original claims. *See Conservation Force*, 733 F.3d at 1204; *see also Potomac Elec. Power Co. v. I.C.C.*, 702 F.2d 1026, 1035 (D.C. Cir. 1983) ("[O]nce the [agency] has rendered a final decision, the issue of regulatory delay will be moot and beyond [the court's] effective power to remedy.").

**B. Mrs. Sorbi's Motion for Leave to File an Amended Complaint**

In recent filings, Mrs. Sorbi lodges substantive objections to the visa refusal, broadly asserting that the adjudication was not "meaningful." *See* Pl.'s Opp'n to Defs.' Notice of Mootness, ECF No. 32 at 2. For example, she asserts that the § 212(f) Refusal Worksheet at issue is invalid because neither she nor her husband were afforded prior notice "regarding the standards, procedures, or opportunity for consideration relating to NIE eligibility." *Id.* at 3–4. Mrs. Sorbi appears to challenge the merits of the § 212(f) refusal itself, too, claiming that Proclamation 10998 was inapplicable to Mr. Kalantarikhandani's situation and, in turn, does not support the consular officer's May 2026 refusal. Pl.'s Suppl. Notice at 1. She also suggests, among other grievances, that the adjudication of her husband's application was insufficiently individualized. Pl.'s Suppl. Mem. Regarding Newly Obtained Refusal Documents and the Inapplicability of Da Costa ("Pl.'s Suppl. Mem."), ECF No. 35 at 1–2. Because the Court must construe *pro se* filings liberally, *see Oviedo v. Washington Metro. Area Transit Auth.*, 948 F.3d 386, 392 (D.C. Cir. 2020), the Court construes Mrs. Sorbi's various substantive objections to the refusal, taken together, as a motion for leave to amend her complaint to assert additional allegations and legal theories.

Even so, the new claims challenging the § 212(f) refusal are unavailing under the doctrine of consular nonreviewability, which "shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). The doctrine is expansive, applying "even where it is alleged that the consular officer failed to follow regulations" or "where the decision is alleged to have been based on a factual error." *Aramnahad*, 2025 WL 3706645, at *6 (citation modified); *see also Chun v. Powell*, 223 F.Supp.3d 204, 206 (D.D.C. 2002). Thus, good-faith consular interpretations and applications of underlying legal authority, like Proclamation 10998 here, constitute valid, nonreviewable bases for a visa refusal.

And even assuming, *arguendo*, that the visa denial burdened Mrs. Sorbi's constitutional rights, which would permit only limited judicial review, the claims still fail. When a visa denial burdens the constitutional rights of a U.S. citizen, the denial is valid so long as it is based on a "facially legitimate and bona fide reason." *Kerry v. Din*, 576 U.S. 86, 104 (2015) (Kennedy, J., concurring). As this Court has explained:

> The consular officer's obligation to provide a facially legitimate and bona fide reason for the visa denial is easy to satisfy . . . and can be fulfilled by simply providing notice of the statutory provision under which the visa was denied. . . . Unless an applicant can affirmatively show bad faith by the consular officer, courts are not to look behind the Government's exclusion of the visa applicant for additional factual details.

*Mansoob v. Blinken*, No. 23-cv-01492, 2026 WL 202677, at *6 (D.D.C. Jan. 27, 2026) (citation modified). Here, the Refusal Worksheet's express reliance on § 212(f) and Proclamation 10998, *see* Pl.'s Consolidated Notice Attachment 1, provides a facially legitimate and bona fide reason for the visa refusal, and Mrs. Sorbi has not plausibly alleged any facts suggesting that the consular officer acted in bad faith.

Nor does Mrs. Sorbi's challenge fall within the narrow exception to consular nonreviewability for forward-looking challenges to the policies governing consular decisions. To clarify, based on the Court's reading of her supplemental filings, Mrs. Sorbi does not challenge the underlying validity of Proclamation 10998 itself.[7] Instead, she challenges the Proclamation's applicability to her husband's particular visa application. *See, e.g.*, Pl.'s Consolidated Mem. of Proceedings and Args., ECF No. 34 at 9 ("[T]he Proclamation does not operate as an absolute bar" to entry for Iranian visa applicants.); Pl.'s Notice of Suppl. Auth., ECF No. 36 at 4 ("Presidential Proclamation 10998 does not expressly identify IR-1 immigrant visas within its text."); Pl.'s Suppl. Notice at 3 ("Any assertion by Defendants regarding the scope or application of the Proclamation to IR-1 immigrant visas should be supported by explicit reference to the Proclamation's text."); Pl.'s Suppl. Mem. at 1 ("[T]he uniform, nonindividualized implementation [of § 212(f) refusals] . . . undermines any basis for applying the Proclamation to Plaintiff's husband's case."). As courts have explained, "consular nonreviewability bars judicial review of the *particular determinations* that consular officers render in specific cases," but

[7] Read charitably, Mrs. Sorbi's filings gesture at a substantive challenge to the validity of a *different* policy, which she would evidently lack standing to pursue: namely, the January 14, 2026, State Department cable entitled "Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge." *Sangster v. Rubio*, No. 3:25-CV-00447-ART-CSD, 2026 WL 222316, at *2 (D. Nev. Jan. 28, 2026). That cable is of no moment here, as Mrs. Sorbi is mistaken in her assertion that this cable was "the same policy" that officers applied to her husband's application. Pl.'s Notice of Suppl. Auth., ECF No. 36 at 2–3. As one of her cited authorities confirms, the "only statutory authority invoked" for this policy was § 221(g), and "[u]nlike some blanket refusal policies of the past, this memo was not issued with an accompanying Presidential Proclamation." *Sangster*, 2026 WL 222316, at *2. Mr. Kalantarikhandani's application was explicitly refused pursuant to § 212(f)—*not* § 221(g)—and Proclamation 10998, so the fact that other courts have found the State Department cable unlawful has no bearing on the present litigation. Other case law Mrs. Sorbi identifies, like that addressing § 212(f)'s inapplicability to immigrant benefit adjudications—*not* visa denials—similarly bears little relation to the facts of this case. *See Dorcas Int'l Inst. of Rhode Island v. U.S. Citizenship & Immigr. Servs.*, No. 26-CV-132-JJM-PAS, 2026 WL 1622708, at *38 (D.R.I. June 5, 2026).

permits "forward-looking challenges to the policies and rules that govern those determinations." *Al-Shakliah v. Rubio*, No. 25-cv-3870, 2026 WL 1283663 (D.D.C. May 11, 2026) (emphasis added); *Pietersen v. United States Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025) (same). Here, Mrs. Sorbi challenges the consular officer's application of Proclamation 10998 to her husband's visa application, not the substantive validity of the Proclamation itself. Her challenge therefore concerns a particular consular determination, rather than a "forward-looking challenge[] to the policies and rules" governing such determinations. *Id.* Accordingly, the exception to consular nonreviewability for forward-looking challenges does not apply, and the visa denial is not subject to judicial review. *See id.*

In sum, the doctrine of consular nonreviewability plainly "prohibits the Court from reviewing the validity of the 212(f) Refusal as it pertains to [Mr. Kalantarikhandani's] specific visa application." *Aramnahad*, 2025 WL 3706645, at *7; *see also Thein v. Trump*, No. 25-CV-2369, 2025 WL 2418402, at *7 (D.D.C. Aug. 21, 2025) (holding that the consular nonreviewability doctrine "forbids" relief to plaintiffs who received section 212(f) refusals based on the Proclamation). For this reason, Mrs. Sorbi's claims concerning the consular officer's refusal would not survive a motion to dismiss and her requests to amend the complaint are therefore futile. The Court accordingly denies the motion for leave to file an amended complaint. *See In re Interbank Funding Corp.*, 629 F.3d at 215.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss (ECF Nos. 21, 31); **DENIES** Plaintiff's motion for leave to file an amended complaint (ECF Nos. 30, 32–37); **DENIES** Plaintiff's motion for default judgment (ECF No. 13, 15); **GRANTS** Plaintiff's motion for leave to file a surreply (ECF No. 27); and **DENIES** as **MOOT** Plaintiff's motions for

expedited consideration of the Government's motion to dismiss (ECF Nos. 12, 28).
Furthermore, the Court **DISMISSES** Defendant U.S. Attorney for the District of Columbia from this action. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 24, 2026

RUDOLPH CONTRERAS
United States District Judge